**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **PHILIP FRANKLIN YOUNG III,** § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:05-CV-0816-Y |
| § | |
| **NATHANIEL QUARTERMAN, Director,** § | |
| **Texas Department of Criminal Justice,** § | |
| **Correctional Institutions Division,** § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**I. FINDINGS AND CONCLUSIONS**

A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

B. PARTIES

Petitioner Philip Franklin Young III, TDCJ #1077687, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Lovelady, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

C. FACTUAL AND PROCEDURAL HISTORY

On June 28, 2001, Young was charged by separate indictment with four counts of sexual

assault of a child in Cause Nos. 11784, 11785, 11786 and 11787 in the 29th Judicial District Court of Palo Pinto, County, Texas. (1Clerk's R. at 1; 2Clerk's R. at 1; 3Clerk's R. at 1; 4Clerk's R. at 1.)[1] The indictments also included enhancement paragraphs, alleging two previous felony convictions. On November 5, 2001, Young executed a Guilty Plea Memorandum in each case, after which he entered open pleas of guilty to the charged offenses. (1Clerk's R. at 55-60; 2Clerk's R. at 55-61; 3Clerk's R. at 55-61; 4Clerk's R. at 55-61.) After a hearing, the trial court found Young guilty of the offenses and assessed his punishment at forty-five years' confinement in each case, the sentences to run concurrently. (Reporter's R., vol. 3 at 45.) Thereafter, Young moved to withdraw his pleas and filed a notice of appeal in each case. (1Clerk's R. at 61-73; 2Clerk's R. at 63-75; 3Clerk's R. at 64-74; 4Clerk's R. at 62-74.) The Eleventh District Court of Appeals of Texas affirmed the trial court's judgments on July 25, 2002. *Young v. Texas*, Nos. 11-01-00410-CR, 11-01-00411-CR, 11-01-00412-CR &11-01-00413-CR, slip op. (Tex. App.–Eastland July 25, 2002) (not designated for publication). In turn, on January 15, 2003, the Texas Court of Criminal Appeals refused Young's petitions for discretionary review. *Young v. Texas*, PDR Nos. 1510-02, 1511-02, 1512-02 &1513-02. Young did not seek writ of certiorari. (Petition at 3.)

On February 20, 2004, Young filed four state applications for writ of habeas corpus, one for each conviction, raising one or more of the claims presented, which were denied by the Texas Court of Criminal Appeals on October 19, 2005, without written order on the findings of the trial court. *Ex parte Young*, Application Nos. 51,569-05, 51,569-06, 51,569-07 & 51,569-08, at cover. Young filed this petition on November 1, 2005.

---

[1] "1Clerk's R.," "2Clerk's R.," "3Clerk's R.," and "4Clerk's R." refer to the trial court clerk's records for Young's state criminal cases in Cause Nos. 11784, 11785, 11786, and 11787, respectively.

D. ISSUES

In twenty-two grounds, Young claims the state trial and habeas courts abused their discretion in various respects, he received ineffective assistance of counsel at trial and on appeal, the prosecution withheld impeachment and other favorable evidence, and the sheriff's investigator violated his due process rights. (Petition at 7-8 & Pet'r Memorandum of Law 1-13.)

E. RULE 5 STATEMENT

Quarterman alleges that one or more of Young's claims are unexhausted as required by 28 U.S.C. § 2254(b)(1)(a). However, notwithstanding Young's failure to exhaust state court remedies on those claims, Young's petition may be denied on the merits. *Id.* § 2254(b)(2).

F. DISCUSSION

*1. Legal Standard and for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it

correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as here, it is an adjudication on the merits, which is entitled to this presumption. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997.)

*2. Competency to Stand Trial and Voluntariness of Young's Pleas*

If a defendant is competent to stand trial, a voluntary, knowing, and intelligent guilty plea waives all nonjurisdictional defects in the proceedings against a defendant preceding the plea, including constitutional challenges to the pretrial proceedings. *See Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975); *Beasley v. McCotter*, 798 F.2d 116, 118-19 (5th Cir. 1986); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Thus, before addressing Young's claims on the merits, it is necessary to determine whether Young was competent to stand trial and whether his guilty pleas were voluntary, knowing, and intelligent.

A defendant is competent to enter a guilty plea if he (1) has sufficient ability at the time of trial to consult with his attorney with a reasonable degree of rational understanding, and (2) has a rational as well as factual understanding of the proceedings against him. *See Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996); *Godinez v. Moran*, 509 U.S. 389, 396-400 (1993); *Drope v. Missouri*, 420

4

U.S. 162, 171-72 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Dusky v. United States*, 362 U.S. 402, 402 (1960). Under Texas law, a defendant is presumed to be competent to stand trial unless proven incompetent by a preponderance of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon Supp. 2005). Because a state court's competency finding is presumed correct, a petitioner bears a heavy burden in contesting his competency during federal collateral review. *See DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994).

A guilty plea is voluntary, knowing, and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing, voluntary, and intelligent, it will be upheld on federal habeas review. *See James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979). He must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)).

In this case, the reporter's record reflects that Young entered his pleas in open court and testified that he was pleading guilty because he was guilty and the enhancement allegations true. (Reporter's R., vol. 2 at 56-59.) He confirmed that he understood the range of punishment for the offenses and that he had read the admonishments and waivers in the Guilty Plea Memorandums and had them read to him. (*Id.*) He confirmed that his pleas were freely and voluntarily entered and that no one promised him anything, coerced him in any way, or threatened him in any way to plead

guilty.  (*Id.*)

Further, the documentary record reflects that Young was advised by counsel and the trial court of his rights, waivers, and the full range of punishment for the offenses.  (1Clerk's R. at 55-60.)  Young executed the Guilty Plea Memorandums in which he acknowledged that he understood the admonishments and was aware of the consequences of his pleas, that he was mentally competent to stand trial and had a rational as well as factual understanding of the proceedings against him and was able to converse with his attorney with a reasonable degree of rational understanding, and that his pleas were freely and voluntarily entered.  (*Id.*)  *See Blackledge*, 431 U.S. at 74; *Kelley v. Alabama*, 636 F.2d 1082, 1084 (5th Cir. 1981).  Such representations by a defendant during plea proceedings carry a strong presumption of verity.  *Blackledge*, 431 U.S. at 74.  The Guilty Plea Memorandums also reflect that counsel reviewed the plea admonishments with Young and confirmed that Young understood the admonishments and the consequences of his pleas, that Young's pleas were knowingly and intelligently made, and that, in his opinion, Young was mentally competent to stand trial. (1Clerk's R. at 55.)  Based on the documentary evidence and the trial court's observance of Young during the plea hearing, the trial court found that Young was sane and competent to stand trial, that he was uninfluenced in making his pleas by promises or threats, and that Young's pleas were knowingly and intelligently made and freely and voluntarily given.  The state habeas court also entered findings refuting Young's claims of incompetence and involuntariness. *Ex parte Young*, Application No. WR-51,569-08, Supplemental R. at 145-51.

Young argues that he raised the issue of his ADD, low IQ, and childhood problems in his pro se motions and that this should have been sufficient to alert the trial court to question him regarding these matters.  However, Young presented no evidence from an expert or otherwise that

6

he was so mentally incompetent as to be unable to understand the proceedings against him or assist in his own defense. Young's allegations that he was under a doctor's care in a personal injury suit, under the care of the county jail doctor, and suffering from paint and chemical fumes do not establish incompetence. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Young failed to show in state court that he was mentally incompetent at the time of the plea proceeding, and he provides no new evidence of incompetency that would entitle him to federal habeas relief. Young has not presented proof sufficient to rebut the presumption that he was competent to stand trial, the regularity of the state court records, and the correctness of the state courts' adjudication of the issue. *See Babb v. Johnson*, 61 F. Supp. 2d 604, 607 (S.D. Tex. 1999); *see also Hill*, 210 F.3d at 485; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994). It appears Young was competent to stand trial and made the voluntary, knowing, and intelligent choice among the alternative courses of action open to him, and, fully understanding those options, he elected to enter open pleas of guilty. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

*3. Abuse of Discretion*

In grounds one through nine, Young claims state trial Judge Jerry D. Ray abused his discretion by not recusing himself from Young's case. Young claims state trial Judge Tom Crum abused his discretion by (1) failing to read and rule on his motions to terminate his attorney, (2) failing to grant his motion to suppress, (3) allowing a letter he wrote to his wife into evidence during the punishment phase, (4) allowing the prosecutor to express his personal feelings, and (5) failing to question Young about his drug consumption and mental and educational history. Finally, Young

7

claims state habeas Judge Steven R. Herod abused his discretion by (1) failing to rule on his motions, (2) failing to conduct a live evidentiary hearing, and (3) giving credence to trial counsel's affidavit.

Young's valid guilty pleas waived his claim against Judge Ray and his claims (1), (2), and (5) against Judge Crum. The remainder of his claims lack merit. The state appellate court held that the letter was nonprivileged under the Texas Commission on Jail Standards and admissible in evidence during the punishment phase. *Young v. Texas*, Nos. 11-01-00410-CR through 11-01-00413-CR, slip op. at 2; 37 TEX. ADMIN. CODE § 291.2. Under jail standards, correspondence to and from government officials, court officials, the media, and the inmate's attorney is privileged, however, all other correspondence is considered nonprivileged and may be opened and read by jail officials. As such, the state court reasoned that Young could not have had a reasonable expectation of privacy with respect to the contents of the letter. Young has not demonstrated that this decision is contrary to or an unreasonable application of federal law on the issue. *See Stroud v. United States*, 251 U.S. 15, 20-22 (1919); *Busby v. Dretke*, 359 F.3d 708, 720-22 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004). Furthermore, under state law, the complained-of argument by the prosecutor during closing argument was a proper plea for law enforcement. *See Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992). Even if the argument was improper, the argument did not render the proceedings so unfair that there is a reasonable likelihood that Young would have received a less severe punishment given his admission of guilt, the nature of the offenses, and his history of criminal activity. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).

Young claims state habeas Judge Steven R. Herod abused his discretion by failing to rule on

his motions and failing to conduct a live evidentiary hearing. As to Young's first claim, alleged defects in a state habeas proceeding are not cognizable under federal habeas review. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001); *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999). Nor has Young shown that the absence of a live evidentiary hearing in his state habeas proceeding prevented him from having a full and fair hearing on his claims. Young apparently sought an evidentiary hearing in an effort to further develop the record in support of his incompetency and ineffective assistance claims. (8State Habeas R. at 8-16, 41.) He produced no evidence in state court, however, to prove that he suffered from a history of ADD, that he was on prescription medication, or that he was suffering from paint and thinner inhalation the day of the plea proceeding. Furthermore, counsel's affidavit corroborates Young's testimony at the plea hearing and his averments in the Guilty Plea Memorandums as to his competence to stand trial and the voluntariness of his pleas. For the first time in this federal proceeding, he presents the affidavit of Shirley M. Drath, who avers that she had knowledge that Young was using and abusing prescription drugs, such as painkillers and muscle relaxers. Young does not explain, however, how he was prevented from presenting Drath's affidavit in the state habeas court nor does Drath's affidavit establish that he was using and abusing prescription medication on the day of trial.

*4. Ineffective Assistance of Counsel*

In grounds ten through seventeen and grounds twenty and twenty-two, Young claims he received ineffective assistance of counsel at trial and on appeal. (Petition at 14-20.) Young asserts trial counsel was ineffective by (1) failing to have a working relationship with Young and to file the motions Young requested him to file, (2) failing to check into Young's medical and mental health, (3) failing to investigate why the detective did not stop his interrogation of Young when he asked for a lawyer, (4) lying to Young about the sentence he would get if he pled guilty, (5) withholding material information, (6) failing to investigate and prepare for trial, and (7) failing to consult with

9

Young.

Young's valid guilty pleas waived all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith*, 711 F.2d at 682; *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). Thus, his claims (1), (2), (3), (5), (6), and (7) are waived. The following discussion is relevant only to Young's claims (4) and (8).

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI. To prevail on an ineffective assistance claim in the context of a guilty plea, a defendant must demonstrate that his plea was rendered involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith*, 711 F.2d at 682. In evaluating an ineffective assistance claim, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Strickland*, 466 U.S. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Young's trial counsel testified via affidavit in the state habeas proceeding that he made no promises or guarantees as to the outcome of the case and denied that he promised Young a particular sentence if he pled guilty. *Ex parte Young*, Application No. 51,569-05, at 44. Further, Young confirmed in the Guilty Plea Memorandums that his pleas were not made because of fear, threats, or persuasion, or any promises from any source causing him to confess guilt, and he confirmed in open court during the plea hearing that no one promised him anything, coerced him in any way, or threatened him in any way to get him to enter his pleas. Based on this evidence, the state habeas court found that counsel made no promises or guarantees concerning the outcome of the case to

Young and did not promise Young a 25- or 30-year sentence. *Id.* at 147-48. Absent any evidence to rebut this finding, we presume the state court's finding is correct. Then and now, Young offers nothing more than his unsubstantiated allegations concerning counsel's alleged promise of a particular sentence. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *Ross*, 694 F.2d at 1011-12.

Young's claim that counsel should have questioned him regarding his competency to stand trial is equally without merit. Counsel stated in his affidavit that he investigated Young's competency to stand trial and believed Young to have a rational understanding of what he was charged with and was able to help prepare his defense. Counsel further stated he was not aware of any competency issues due to prescription medication or otherwise and that nothing triggered him to get Young evaluated. (State Habeas Supplemental R. at 44.) Further, as noted above, Young confirmed in the Guilty Plea Memorandums, and the state trial court found, that he was sane and competent to stand trial on the day of the plea proceeding. Based on this evidence, the state habeas court found counsel did investigate Young's competency and believed Young to be competent to stand trial. Young failed to show in state court that he was mentally incompetent at the time of the plea proceeding, and he provides no new evidence of incompetency. Young's claim, after the fact, unsupported by anything in the record, is insufficient to rebut the presumption that he received effective assistance of counsel, the presumption of competency, and the presumption of regularity of the state court records. *See Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"); *Babb*, 61 F. Supp. 2d at 607; *Siao-Pao v. Keane*, 878 F. Supp. 468, 472 (S.D.N.Y. 1995); *see also, e.g., Panuccio v. Kelly*, 927 F.2d 106, 109 (2nd Cir. 1991) (a defendant's testimony after the fact suffers from obvious credibility problems). Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions

on a critical issue in his pro se petition to be of probative evidentiary value. *See Ross*, 694 F.2d at 1011-12. In his twentieth claim, Young claims his appellate counsel was ineffective by failing to raise various issues presented in this petition. The *Strickland* standard applies to claims of ineffective assistance of appellate counsel, and Young must show both that his appellate attorney's alleged errors constituted deficient performance and that his appeal was prejudiced as a result. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). Young has not identified any meritorious issues that were not raised on appeal. Thus, appellate counsel cannot be found ineffective for having failed to raise one or more of the claims. Nor can prejudice result from counsel's failure to assert a meritless claim or make a meritless argument. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

5. *Prosecutorial Misconduct*

In his eighteenth ground, Young claims the prosecutor improperly obtained without a warrant and withheld the letter he wrote to his wife containing derogatory statements against the prosecutor, the investigator, and the local court system. In his nineteenth ground, Young claims the prosecutor withheld, or the investigator for the Palo Pinto County Sheriff's Department destroyed, a handwritten statement he gave to the investigator on the morning he surrendered himself to law enforcement. (Petition at 19.) The evidence at the suppression hearing was that Young gave a handwritten statement to Investigator Ira Mercer before Mercer questioned him about the offenses. (2Reporter's R. at 23.) According to Mercer, Young gave him such a statement, but he disregarded it as worthless to the investigation and of no evidentiary value to him. (*Id.* at 23-24) Thereafter, Mercer informed Young of his rights, questioned Young, and prepared a written statement for Young's signature. Young apparently attempts to raise a Fourth Amendment and/or a *Brady* claim by arguing that his written statement differed from the typewritten statement and that there was an improper seizure and suppression of favorable evidence that would have established his innocence.

12

*See Brady v. Maryland*, 373 U.S. 83 (1963). Young's valid guilty pleas waived any such claims. *See Tollet v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Ruiz*, 536 U.S. 622, 628-30 (2002); *United States v. Lampazianie*, 251 F.3d 519, 526 (5th Cir. 2001); *Diaz*, 733 F.2d at 376.

*6. Right to Counsel*

Finally, in his twenty-first ground, Young claims he invoked his right to counsel during Mercer's questioning of him, to no avail. (Petition at 19.) Although a suspect subject to custodial interrogation has a constitutional right to consult with an attorney during questioning, Young's valid guilty pleas waived any such claim. *See Davis v. United States*, 512 U.S. 452, 456 (1994) (citing *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966)); *Busby v. Holman*, 356 F.2d 75, 77-78 (5th Cir. 1966).

## II. RECOMMENDATION

Young has failed to satisfy the legal standard for habeas corpus relief set forth above, and his petition for writ of habeas corpus should be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file, not merely place in the mail, specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August 8, 2006. Failure to file specific written objections within the specified time shall bar a de novo determination by the district court of any finding of fact or conclusion of law and shall bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any unobjected-to proposed factual findings and legal conclusions accepted by the district

court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until August 8, 2006, to serve and file, not merely place in the mail, written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the  docket of the United States District Judge.

SIGNED July 18, 2006.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE